FILED
MAR 15 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| G. E. CAPITAL INFORMATION TECHNOLOGY SOLUTIONS, INC., | ) | |
| Plaintiff, | ) | Case No. 06-210 C |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

---

## COMPLAINT

---

COMES NOW Plaintiff G. E. Capital Information Technology Solutions, Inc., by and through its undersigned attorneys and for its cause of action against Defendant The United States, Veterans Health Administration, states as follows:

**Count One: Breach of Contract**

1. Plaintiff G. E. Capital Information Technology Solutions, Inc. is a California corporation.

2. IOS Capital, Inc. was a Delaware corporation which converted to a limited liability company under the name of IOS Capital, LLC on January 10, 2002 (collectively, "IOS Capital").

3. Defendant Veterans Health Administration is an agency of the Department of Veterans Affairs of the United States (the "VHA").

4. Plaintiff's certified claim was submitted in writing to the applicable contracting

officer on January 9, 2006, and the contracting officer failed to issue a decision on the claim within sixty days after receipt thereof and, under 41 USC §605(c)(2) & (5), the claim was deemed to be denied.

5. This is a civil action for breach of contract against an agency of the United States in excess of $10,000.00 which was denied by the applicable contracting officer and, accordingly, this court has personal and subject matter jurisdiction pursuant to 28 USC §2501 and 41 USC §609.

6 On September 2, 2003, in the state of Missouri, the VHA and IOS Capital made and entered into a Lease Agreement (the "Lease") whereby the VHA leased from IOS Capital certain photocopying machines and related equipment, a copy of which Lease is attached hereto as *Exhibit 1* and incorporated herein by reference.

7. The Lease was signed and executed by Mr. Bryan T. Bayley, the Chief Information Officer of the VHA, and the duly authorized representative of the VHA contracting officer including the VHA Senior Procurement Executive and the VHA Procurement Executive, and had actual authority to enter into the Lease on behalf of the VHA.

8. The leased equipment was delivered to the VHA at its premises at 4801 Linwood, Kansas City, Missouri 64128, by Ms. Jill Beck and other duly authorized contracting officers of the VHA.

9. Under the terms of the Lease, the VHA agreed to pay to IOS Capital the rental sum of $3,790.00 per month for sixty (60) months, a late charge equal to five percent (5%) of any

rental or other payment past due for more than ten (10) days, the accelerated balance of all future payments due under the Lease discounted at 6% upon default, the present value of the lessor's anticipated value of the equipment at the end of the lease term upon default, and all of the costs, expenses, and attorney's fees associated with any action to enforce the Lease.

10. The VHA breached the Lease by failing to pay to IOS Capital or to Plaintiff all of the rental and other charges due thereunder and by failing and refusing to return all of the leased equipment to IOS Capital or to Plaintiff.

11. IOS Capital and Plaintiff notified the VHA in writing that it had defaulted on its obligations under the Lease and accelerated payment of all amounts due under the Lease and demanded full payment thereof and demanded the return of the equipment.

12. The VHA failed and refuses to cure its defaults.

13. IOS Capital transferred and assigned to Plaintiff all of its rights, title and interests in and to the equipment and the Lease and all of its claims and causes of action herein against the VHA.

14. IOS Capital and Plaintiff performed all of their duties and obligations under the terms of the Lease.

15. As a proximate result of the foregoing, Plaintiff was damaged by at least $160,000.00.

WHEREFORE, Plaintiff G. E. Capital Information Technology Solutions, Inc. respectfully requests this Court to enter judgment in its favor and against Defendant The

United States, Veterans Health Administration, for the full amount of its aforesaid damages of at least $160,000.00, for interest thereon at the legal rate until paid, for all of its costs, expenses, and attorney's fees incurred herein, and for such other and further relief consistent herewith as the court deems equitable and just.

**Count Two: Breach of Implied Contract**
(Pled in the alternative to Count One)

16. Plaintiff restates and realleges into this count all of the allegations in ¶1 through ¶15 above.

17. The VHA, through the actions of the VHA contracting officer including the VHA Senior Procurement Executive and the VHA Procurement Executive, the administration head and the directors of the staff office concerned, authorized and approved the delivery of the leased equipment to the VHA and the VHA's acceptance of the equipment, the use of the leased equipment and, on at least twenty-four (24) separate occasions, authorized and approved the payment of and directed the payment of the monthly rental charges of $3,790.35 due on the Lease and for the VHA's use of the leased equipment - and thereby affirmed, acquiesced in and ratified the Lease on behalf of the VHA.

18. As a result of the foregoing, an implied-in-fact contract was made and entered into between Plaintiff and the VHA for the use and lease of the leased equipment in accordance with the terms set forth in the written Lease.

19. Each of the aforesaid individuals had express and actual authority to enter into the aforesaid implied-in-fact contract on behalf of the VHA.

20. As a proximate result of the foregoing, Plaintiff was damaged by at least $160,000.00.

WHEREFORE, Plaintiff G. E. Capital Information Technology Solutions, Inc. respectfully requests this Court to enter judgment in its favor and against Defendant The United States, Veterans Health Administration, for the full amount of its aforesaid damages of at least $160,000.00, for interest thereon at the legal rate until paid, for all of its costs, expenses, and attorney's fees incurred herein, and for such other and further relief consistent herewith as the court deems equitable and just.

**Law Offices of**
**Thomas G. Berndsen, P.C.**

By: ______________________

Thomas G. Berndsen, MBE#32726
1650 Des Peres Road, Suite 135
St. Louis, Missouri 63131-1899
(314) 965-5600
(314) 965-5650 (Facsimile)
thomasg@berndsenpc.com
Attorneys for Plaintiff

SEP 0 8 2003

**IOSCapital**

# Lease Agreement Number: ________

Thank you for choosing IKON! This lease agreement ("Lease") has been written in clear, easy to understand language. Please take time to review the terms. When we use "you" or "your", we are referring to you, our Customer. When we use "IKON", we are referring to IKON Office Solutions, Inc., which is the equipment supplier and one of the largest distributors of office solutions in the world. When we use "we", "us", "our" or "IOS Capital", we are referring to IOS Capital, Inc. the wholly-owned captive finance subsidiary of IKON. Our principal corporate office is located at 1738 Bass Road, Macon, GA 31210

## CUSTOMER INFORMATION

Full Legal Name: VETERANS HEALTH ADMINISTRATION

Customer Billing Contact: JILL BECK

Phone: 816-922-2317 (ext) Fax: 816-922-3340

Customer Location Address: 4801 Linwood Blvd.

Customer Billing Address (if different):

City: Kansas City County: Jackson State: MO Zip: 64128

City ____ County ____ State ____ Zip ____

## EQUIPMENT DESCRIPTION

| Quantity | Description, Make, Model & Serial Number | Quantity | Description, Make, Model & Serial Number |
|---|---|---|---|
| 2 | Canon IR-105 | 2 | ImagePASS M2 Print Controller |
| 2 | Canon K3N Finishers | | |
| 2 | Canon Paper Decks | | |

☐ Check if Additional Equipment Schedule attached

## PAYMENT SCHEDULE

| Minimum Lease Term | Payment Due (check one) | Payment Without Sales, Use, and Property Tax | |
|---|---|---|---|
| 60 (months) | ☑ Monthly<br>☐ Quarterly<br>☐ Other<br>☐ Step (see attached) | $3790.35 | Advance Payment $ ____<br>(Tax Incl'd) by Check # ____<br>☐ Apply to 1st Payment<br>☐ Other ____ |

**ADDITIONAL PROVISIONS** (if any) are ________

Sales Tax Exempt ☑ YES (Attach Exemption Certificate)

Customer Billing Reference Number (P.O. #, etc.) ________

Addendum(s) attached ☐ YES (check if yes and indicate total number of pages) ______

## TERMS AND CONDITIONS.

1 Lease Agreement. You agree to lease from us the equipment ("Equipment") listed above. THIS LEASE IS UNCONDITIONAL AND NON-CANCELABLE. Effective as of delivery of the Equipment, you agree to all of the terms and conditions contained in this Lease. You agree this Lease is for the entire lease term indicated above. You also agree that the Equipment will be used solely for business purposes and not for personal, family or household purposes and the "Customer Location" is a business address. Our acceptance of this Agreement, when given, is indicated by our signature.

2 Location of Equipment. You will keep the Equipment at the customer location specified above. You must obtain our written permission, which will not be unreasonably withheld, to move the Equipment. With reasonable notice, you will allow us or our designee to inspect the Equipment. (The terms and conditions set forth on the reverse side of this page are hereby incorporated herein by reference.)

**AUTHORIZED SIGNER** THE PERSON SIGNING THIS LEASE ON BEHALF OF THE CUSTOMER REPRESENTS HE/SHE HAS THE AUTHORITY TO DO SO

[signature] (Authorized Signer Signature) Date 9-2-03 BRYAN T. Bayley (Authorized Signer's Printed Name) CHIEF INFORMATION OFFICER (Authorized Signer's Title)

**PERSONAL GUARANTY** In consideration of IOS Capital's entering into the above Agreement, I unconditionally guarantee that the Customer will make all payments and pay all other charges required under such Agreement when they are due, and that the Customer will perform all other obligations under the Agreement fully and promptly. I also agree that IOS Capital may modify the Agreement or make other arrangements with the Customer and I will still be responsible for those payments and other obligations under the Agreement. I agree that IOS Capital need not notify me of any default under the Agreement and may proceed directly against me without first proceeding against the Customer or the Equipment, in which event, I will pay all amounts due under the terms of the Agreement. In addition, I will reimburse IOS Capital for any costs or reasonable attorney fees incurred in enforcing its rights. This continuing guaranty is a guaranty of payment and not of collection. I CONSENT TO THE VENUE AND NON-EXCLUSIVE JURISDICTION OF ANY COURT LOCATED IN EACH OF THE STATE OF GEORGIA AND THE STATE WHERE MY PRINCIPAL PLACE OF BUSINESS OR RESIDENCE IS LOCATED TO RESOLVE ANY CONFLICT UNDER THIS GUARANTY.

X ________ Guarantor Signature Date ________ Home Address ________

City ____ State ____ Zip ____

________ (Printed Name of Guarantor, Do Not Include Title) Home Phone ( ) ____ SSN ____

(Tear on perforation)

**DELIVERY AND ACCEPTANCE** With respect to Lease Agreement No ________ ("Lease") between IOS Capital, Inc. and ________ as customer ("you"), you hereby certify that each item of equipment described on such Lease Agreement has been delivered, installed and accepted and you agree that each such equipment is in good condition and satisfactory for all purposes of the Lease Agreement.

X ________ Signature Date ________ ...ed Name ________ Title ________

EXHIBIT 1 (ALL-STATE LEGAL)

3 Ownership of Equipment, Assignment We are the sole owner and title holder to the Equipment You will keep the Equipment free of all liens and encumbrances YOU HAVE NO RIGHT TO SELL, TRANSFER, ENCUMBER, SUBLET OR ASSIGN THE EQUIPMENT OR THIS AGREEMENT WITHOUT OUR PRIOR WRITTEN CONSENT (which consent shall not be unreasonably withheld) You agree that we may sell or assign any of our interests without notice to you In that event, the assignee will have such rights as we assign to them but none of our obligations (we will keep those obligations) and the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us If you have entered into a maintenance service or supply agreement with IKON, such agreement will remain in full force and effect with IKON and will not be affected by any such assignment

4 Taxes and Filing Costs In addition to the payments under this Lease, you agree to pay all taxes, fees, and filing costs related to the use of the Equipment, even if billed after the end of the term of this Lease If we are required to file and pay property tax, you agree to reimburse us If you are required to file and pay the taxes directly to the tax collector, we will notify you

5 UCC Filing To protect our rights in the Equipment in the event this Lease is determined to be a security agreement you hereby grant to us a security interest in the Equipment, and all proceeds, products, rents or profits from the sale, casualty loss or other disposition thereof You authorize us to file a copy of this Lease as a financing statement and appoint us or our designee as your attorney-in-fact to execute and file, on your behalf, financing statements covering the Equipment At our request you will sign and deliver such documents for filing purposes

6 Warranties We transfer to you, without recourse, for the term of this Agreement, any warranties made by the manufacturer with respect to the Equipment Since we are a finance company and neither the manufacturer nor the distributor of the Equipment, WE MAKE NO WARRANTIES, EXPRESS, OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE

7 Maintenance of Our Equipment and Agency You agree to install (if required), use and maintain the Equipment in accordance with manufacturers' or IKON's specifications and to use only those supplies which meet such specifications You will keep the Equipment in good condition, except for ordinary wear and tear If you have contracted for maintenance and support activities from IKON regarding the Equipment, IKON alone is responsible for all of those services IKON and IOS Capital are not agents for each other

8 Indemnity, Liability and Insurance (a) The parties to this Lease will indemnify, defend and hold each other harmless from all losses, damages, claims, suits and actions (including court costs and reasonable attorneys' fees) ("Claims") arising out of any breach of this Lease except to the extent caused by the negligence or intentional acts or omissions of the other Notwithstanding anything to the contrary, in no event shall we be liable to you for any indirect, special or consequential damages (b) Because you have possession and control of this Equipment, you are fully responsible for any Claim or other damage, injury or loss caused by (or to) the Equipment or other property resulting from the use, misuse or possession of the Equipment or any accident or other casualty relating to the Equipment We are responsible for damage or injury to third persons when the damage or injury is caused exclusively by our negligent acts or omissions You agree to maintain insurance to cover the Equipment and will name us as an additional insured and loss payee on your insurance policy If you fail to provide evidence of insurance reasonably satisfactory to us, you authorize us to obtain coverage on your behalf and you agree to pay for this coverage In the event of loss or damage to the Equipment you agree to remain responsible for the payment obligations under this Lease until the payment obligations are fully satisfied

9 Renewal and Return of Equipment After the minimum term or any extension, this Lease will renew on a month-to-month basis unless you notify us in writing at least 30 days prior to the expiration of the minimum term or extension You must pay any additional payments due until the Equipment is returned by you and is received in good condition and working order by us or our designees IKON will bear shipping charges so long as replacement Equipment is selected from IKON

10 Lease Payments Payments will begin on the delivery date You agree to pay us each payment when it is due, and if any payment is more than 10 days late, you agree to pay a late charge of 5% or $5 (whichever is greater, but not to exceed the maximum amount allowed by applicable law) on the overdue amount You also agree to pay $25 for each check returned for insufficient funds or any other reason

11 Default IF YOU DO NOT PAY ANY AMOUNT WHEN IT IS DUE, OR BREACH ANY OTHER TERM OF THIS LEASE, YOU ARE IN DEFAULT IF YOU DEFAULT, WE HAVE THE RIGHT TO EXERCISE ANY AND ALL LEGAL REMEDIES AVAILABLE TO US BY APPLICABLE LAWS, INCLUDING ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES AS A CUSTOMER OR LESSEE THAT YOU HAVE UNDER ARTICLE 2A AGAINST US (BUT NOT AGAINST THE MANUFACTURER, ANY VENDOR OF THE EQUIPMENT OR IKON) Additionally, we are entitled to all past due payments and we may accelerate and require you to immediately pay us the future payments due under the Lease present valued at the discount rate of 6% to the date of default plus the present value (at the same discount rate) of our anticipated value of the equipment at the end of the term of this Lease We may repossess the Equipment and pursue you for any deficiency balance after disposing the Equipment, all to the extent permitted by law You waive the rights you may have to notice before we seize any of the Equipment You agree that all rights and remedies are cumulative and not exclusive You promise to pay reasonable attorney fees and any cost associated with any action to enforce this Lease This action will not void your responsibility to maintain and care for the Equipment, nor will IKON be liable for any action taken on our behalf Default also includes your becoming insolvent, your assignment of assets for the benefit of creditors, your filing for bankruptcy protection or failure of the guarantor to honor its commitment If we take possession of the Equipment, we agree to sell or otherwise dispose of it under such terms as may be acceptable to us in our discretion with or without notice, at a public or private disposition, and to apply the net proceeds (after we have deducted all costs, including reasonable attorneys' fees) to the amounts that you owe us You will remain responsible for any deficiency that is due after we have applied any such net proceeds

12 Business Agreement and Choice of Law YOU AGREE THAT THIS AGREEMENT WILL BE GOVERNED UNDER THE LAW FOR THE STATE IN WHICH OUR PRINCIPAL CORPORATE OFFICE IS LOCATED YOU ALSO CONSENT TO THE VENUE AND NON-EXCLUSIVE JURISDICTION OF ANY COURT LOCATED IN EACH OF THE STATE OF GEORGIA AND THE STATE WHERE YOUR PRINCIPAL PLACE OF BUSINESS OR RESIDENCE IS LOCATED TO RESOLVE ANY CONFLICT UNDER THIS AGREEMENT WE BOTH WAIVE THE RIGHT TO TRIAL BY JURY IN THE EVENT OF A LAWSUIT

13 No Waiver or Set off You agree that our delay, or failure to exercise any rights, does not prevent us from exercising them at a later time If any part of this Lease is found to be invalid, then it shall not invalidate any of the other parts and the Lease shall be modified to the minimum extent as permitted by law ALL PAYMENTS TO US ARE "NET" AND ARE NOT SUBJECT TO SET OFF OR REDUCTION

14 Entire Agreement, Delivery & Acceptance Certificate, Vendor Contract This Lease represents the entire agreement (including addendums referenced on the face of this Lease which are signed and attached) between us and you Neither of us will be bound by any amendment, waiver, or other change unless agreed to in writing and signed by both Any purchase order, or other ordering documents will not modify or affect this Lease nor have any other legal effect and shall serve only the purpose of identifying the equipment ordered You agree to sign and return to us a delivery and acceptance certificate within three business days after any Equipment is delivered You agree that either (a) you have reviewed, approved, and received a copy of the equipment supplier contract covering the Equipment we acquired from the equipment supplier, or (b) that we have informed you by this writing of the identity of the equipment supplier, that you may have rights under the equipment supplier contract, and that you may contact the equipment supplier for a description of those rights

15 Counterparts, Facsimiles This Agreement may be executed in counterparts The counterpart which has our original signature and/or is in our possession shall constitute chattel paper as that term is defined in the Uniform Commercial Code ("UCC") and shall constitute the single true original agreement for all purposes If you sign and transmit this Agreement to us by facsimile, the facsimile copy as received by us shall be binding against you as if it were manually signed However, no facsimile or other version of this Agreement shall be binding against us until manually signed by us You agree to deliver the facsimile version of any counterpart of this Agreement with your original signature upon our request

OCT 0 2 2003

Accepted by IOS Capital Inc

[signature]

| Name | Authorized Signer | Title | Date |
|---|---|---|---|